THE CO-OPERATIVE FIRE INSURANCE ORDER OF KNOX-VILLE *et al. v.* J. F. J. LEWIS, Clerk, etc.

1. PRIVILEGE TAX. *Mutual insurance companies.* Under the act of March 30, 1883, imposing a privilege tax of $5 " on each agent of mutual insurance companies, fire or life," an agent of a co-operative fire insurance company, an organization chartered under the act of 1875, page 232, sub-section 2 of section 1, is liable to pay the privilege tax.

2. SAME. *Same.* Such organization is not " for charitable and benevolent purposes," but for individual benefit.

3. SAME. *Same.* If its powers and obligations make it a mutual insurance organization, it is liable for the privilege tax, although the charter may declare the object to be " the general good and not individual profit."

4. SAME. *Same. Agents.* An officer of said organization who seeks members is an agent, and is liable for the tax.

---

### FROM KNOX.

---

Appeal in error from the Criminal Court of Knox county.　M. L. HALL, J.

LEWIS TILLMAN for Insurance Order.

ATTORNEY-GENERAL LEA for Lewis.

DEADERICK, C. J., delivered the opinion of the court.

This is an agreed case to test the liability of plaintiffs in error, Stewart and Bates, to a tax of $5 each imposed as a privilege tax, by the act of 1883, "on each agent of mutual insurance companies, fire or life," in each county where he does business.

His Honor, the judge of the criminal court of Knox county, held that the "Co-operative Fire Insurance Order" is a mutual fire insurance company within the meaning of the act passed March 30, 1883, and that the agents of said company, or order, are liable for the privilege tax to the State in each county where they do business. He rendered judgments against Stewart and Bates for $5 each, treating both as agents within the meaning of the statute.

The agreed facts show that Bates "is an authorized agent to solicit and take applications for membership in the order." It is also agreed that Stewart, the local secretary and treasurer, was required "to interest himself in behalf of the order, by seeking members and otherwise."

It is insisted that the order in question was organized and the charter obtained under the act of 1875, page 232, sub-section 2 of section 1, and the amendment thereof by the act of 1881, page 69, "for the general good, and not for individual profit, and is a benevolent or charitable undertaking and is not liable to taxation.

The charter declares that the five persons named "are hereby constituted a body politic and corporate, by the name and style of the Co operative Fire In-surance Order, having for its object and purpose the protection of property from destruction, loss or damage by fire, wind or lightning, by providing compensation to the owner upon the principle of the mutual assessment of the members of the company; the general good and not individual profit being the object of the organization."

Power is conferred upon the corporation to sue and be sued, to have a common seal, to purchase and hold real estate, or to receive the same by gift or devise, in addition to personal property owned by the corporation, necessary for the transaction of the corporate business, to establish by-laws and make rules and regulations expedient for the management of its affairs, and to appoint subordinate officers and agents, in addition to a president, secretary or treasurer, as the business of the corporation may require.

The charter then provides that the five or more members shall elect from their number a president, secretary and treasurer, and they, with the other corporators, are to constitute the first board of directors.

It then prescribes the mode of election of directors and declares their powers and duties, and directs that the board of directors shall have the right to determine what amount of money paid into the treasury shall be a prerequisite for membership, or if necessary, what amount shall thus be annually paid.

Another recital of the charter is that "the general welfare of society, not individual profit," is the object for which this charter is granted, and hence, the members are not stockholders in ᐧ the legal sense of the term, and no dividends or profits shall be divided among the members. Certain assessments are made upon members when a loss occurs, and charges for membership and other fees and annual dues are made.

ᐧ The act of 1883, page 134, imposes a privilege tax of $5 on each agent of "mutual insurance companies," fire or life.

The charter of the "Co-operative Fire Insurance Order" declares its object and purpose to be the protection of property from destruction or damage by fire, etc., by providing compensation to the owner upon the principle of the mutual assessment of the members of the company. The members are mutually bound to each other, to compensate any one of their members who may incur a loss by fire. And this we think makes the corporation a mutual insurance company within the meaning of the act of 1883. It is argued that the organization is for benevolent and charitable purposes, and not for individual profit.

The main incentive to becoming a member, is undoubtedly a selfish rather than a benevolent one, not

selfish in a censurable sense, but in that the member's desire is for his own individual benefit, and for the protection of his private interests. It is the promise to him, that if his house is burnt, he shall be paid for it, that induces him to agree to pay his annual dues and other charges, and when his fellow-member's house is burnt, to pay a small sum towards compensation for the loss.

The membership is made up of those who think this plan of mutual insurance is cheaper than other modes, but the purpose is to secure insurance, and not to exercise charity or benevolence. The benefits offered are restricted to those who become members of the order, and who agree to do just what they require to be done for themselves, upon loss by fire. They all contract for a benefit to themselves in certain contingencies, and pay their money for it. True the charter declares the object to be "the general good and not individual profit." But we gather the purposes from the particular object in view, rather than from abstract declarations of a general purpose to do acts of charity. Its powers and obligations make it a mutual insurance organization, and none participate in its benefits but those who contribute money to carry on its operations.

The act of 1883 imposes a privilege tax upon the agents of mutual insurance companies, and we are of opinion that the agents of the "Co-operative Fire Insurance Order" are liable to the payment of this tax as falling within the description and meaning of the acts, nor is the act partial, inasmuch as it subjects to the

same mode of taxation all agents of mutual insurance companies, and taxes other companies, whose modes of business are different, by a different mode.

Another question is made as to liability of taxing defendant Stewart, the secretary and treasurer, as an agent. It is admitted defendant Bates is an agent, but it is insisted that Stewart is not an agent, but an officer of the order.

By section 4 of article 4 of the rules and regulations of the "Order," it is made the duty of the local secretary and treasurer to interest himself in behalf of the order by seeking members and otherwise. He is to examine buildings on which protection is sought, and see that all questions are answered by the applicant, and present the application to the chairman of the board, collect the membership fee and examination fees and one annual assessment.

These are the duties of other agents to obtain members, being the first and most important one, and in this duty the secretary and treasurer assumes to act as the agents of the order, and so acting he is liable to the tax imposed.

We are of opinion, therefore, that the judgment of the court below was correct, and affirm it.